**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Robert OYNES, Defendant–Appellant.**

**No. 94CA0676.**

Colorado Court of Appeals, Div. II.

Feb. 8, 1996.

Rehearing Denied March 14, 1996.

Certiorari Denied Aug. 19, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, E. Michael Hoffman, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge HUME.

Defendant, Robert John Oynes, appeals the judgment of conviction entered following a trial to the court in which he was found guilty of one count of cultivation of marijuana. Defendant's appeal rests solely upon the trial court's ruling denying his pre-trial motion to suppress evidence and statements obtained as the result of two allegedly unlawful searches. We affirm.

## I.

### A.

Defendant first argues that the trial court erred in ruling that, for constitutional purposes, no "search" occurred when a police officer used binoculars to observe marijuana plants in defendant's bedroom window from a vantage point on private property. We perceive no error.

On the morning of August 28, 1993, a deputy with the La Plata County Sheriff's Office was hiking through a series of rolling hills and small canyons outside the town of Marvel. He entered a large pasture and noticed a house with outbuildings approximately three hundred yards away.

Because it was a particularly cloudy and dark morning, the deputy's eye was drawn to an extraordinarily bright light emanating from the upstairs window of the house. The deputy described the brightness as being similar to that of an electric arc welder.

The deputy approached the house to within sixty yards. Although he did cross stock fences in approaching the house, at all times he remained outside a fenced area immediately surrounding the house which contained a manicured grass lawn that was unlike the surrounding pasture land.

Using a pair of binoculars of unspecified strength, the deputy looked through the uncovered window into the room containing the bright light. There, he observed a hanging, hooded light above several plants. Based on the shape, pattern, and texture of the plant leaves, he believed the plants to be marijuana.

The deputy then moved to the side of the house facing the drive approaching the residence and walked to within a distance of forty yards, again staying outside the lawn area immediately surrounding the residence. From there, he observed a window behind which was some type of dark covering material.

Leaving the property by means of the drive leading to a county road located on the opposite side of the property from which he had approached, the deputy noticed for the first time a "no trespassing" sign and a closed metal gate. The deputy did not have permission of the owner to enter the fenced land from which he made his observations and did not know who owned the property.

At the suppression hearing, defendant testified that he leased the house and yard surrounded by the "inner fence" from the owner, but that the owner used the surrounding fields for his own purposes.

■ For purposes of the Fourth Amendment's warrant requirement, "[a] search occurs when the government intrudes on an area where a person has a 'constitutionally protected reasonable expectation of privacy.'" *Henderson v. People*, 879 P.2d 383, 387 (Colo.1994) *cert. denied,* —— U.S. ——, 115 S.Ct. 677, 130 L.Ed.2d 609 (1994).

■ This determination is governed by a "two-part inquiry: [F]irst, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210, 215 (1986).

■ The objective reasonableness of a privacy expectation is a fact-specific inquiry which must take account of all circumstances and is not tied to a single factor nor controlled by a specific formula. The defendant bears the burden of establishing that a search has taken place. *Henderson v. People, supra.*

■ In *United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), the United States Supreme Court held that no "search" occurred when officers entered a field enclosed by stock fences and looked inside the open door of a barn which was located outside the curtilage of the residence on the property. Although *Dunn* did not involve observation of the interior of a residence, the Court assumed that the interior of the barn was an area protected by the Fourth Amendment and explained that "there is no constitutional difference between police observations conducted while in a public place and while standing in the open fields." *United States v. Dunn, supra,* 480 U.S. at 304, 107 S.Ct. at 1141, 94 L.Ed.2d at 337.

■ The similar treatment of open fields and public places is significant because a police officer standing in a public place may view the interior of a private residence if observable with the naked eye. *See People v. Gomez,* 632 P.2d 586 (Colo.1981) (no "search" where officer standing on entrance walkway looked through curtain opening into motel room), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); *People v. Donald,* 637 P.2d 392 (Colo.1981) (no "search" where officer standing on common entrance viewed illegal activity in apartment through a window).

Our supreme court has never directly addressed the question of whether a police officer's use of binoculars to view the interior of a residence constitutes a "search," but it

has cited authorities from other jurisdictions involving the use of optical devices to enhance viewing abilities.

For example, in *People v. Becker*, 188 Colo. 160, 533 P.2d 494 (1975), the supreme court approvingly cited *Commonwealth v. Hernley*, 216 Pa.Super. 177, 263 A.2d 904 (1970), *cert. denied*, 401 U.S. 914, 91 S.Ct. 886, 27 L.Ed.2d 813 (1971). In *Hernley*, the Superior Court of Pennsylvania held that police officers' use of binoculars of unspecified strength to view the interior of a printshop was not a search because the defendant's failure to curtain the window demonstrated a failure to manifest an expectation of privacy.

Under the unique circumstances of this case, we agree with the district court that the deputy's actions did not constitute a "search." As the district court observed, the objective reasonableness of defendant's expectation of privacy was substantially undermined by his display of a high intensity light that "invites not only the gaze of the curious, but also attracts the attention of the casual observer." Our review of the photographic exhibits confirms that, even on a sunny day, defendant's unusually bright halide light could be seen from a great distance. Defendant's actions simply did not manifest the type of subjective privacy expectation typically connected with ordinary activities conducted inside a private residence.

Moreover, the deputy made his observations while standing in an open field, an area over which defendant enjoyed no reasonable expectation of privacy. *See United States v. Dunn, supra.* While the remote location of the residence gives rise to a greater expectation of privacy than might exist in a metropolitan location, the area was not shown to be so completely uninhabited that it was reasonable for defendant to believe that no person with a pair of binoculars would ever view his brightly illuminated window from the surrounding fields.

Absent evidence in the record indicating that the deputy's binoculars were extraordinarily powerful, we conclude the observation was not a "search" for constitutional purposes. *See State v. Vogel*, 428 N.W.2d 272 (S.D.1988) (holding that officer's use of a camera equipped with a zoom lens to view marijuana plants in the window of defendant's residence was not a search because there was no showing that the lens was a sophisticated type not generally available); *see also Sundheim v. Board of County Commissioners*, 904 P.2d 1337 (Colo.App. 1995) (county investigator's use of telescopic camera lens to view activities on private property does not constitute a search). *But see United States v. Taborda*, 635 F.2d 131 (2d Cir. 1980).

■ Alternatively, defendant argues that Colo. Const. art. II, § 7, affords broader protection in this area than does the Fourth Amendment. However, because this is a separate and independent constitutional claim which was not raised before the trial court, we decline to address it for the first time on appeal. *Cf. People v. Cagle*, 751 P.2d 614 (Colo.1988) (appellate courts will not address constitutional issues raised for the first time on appeal).

### B.

Defendant next contends that the trial court erred in ruling that the warrant authorizing the search of his residence was supported by probable cause. We disagree.

In his affidavit in support of probable cause to obtain a search warrant, the deputy detailed his observations as set forth in the previous section. In addition, the deputy's affidavit informed the court that he believed the bright light he had seen was a metal halide "grow light," and that the plants were similar in shape, color, and outline to marijuana, but that he was unable to make a positive identification because of glare from the window glass. The deputy also averred in some detail his observation of other items about the house and inside the windows that were consistent with a marijuana growing operation.

In addition, the deputy's affidavit also described his ten years of law enforcement experience, stating that he had attended three-hundred hours of narcotics investigation training, including a Drug Enforcement Agency course on indoor marijuana cultivation.

■ Affidavits in support of the issuance of a warrant should be interpreted in a common sense fashion. Probable cause is measured in terms of probability, not certainty,

and deference should be given to the initial determination by the court regarding probable cause. *People v. Hakel,* 870 P.2d 1224 (Colo.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 325, 130 L.Ed.2d 285 (1994).

■ The duty of a court reviewing the sufficiency of an affidavit on which a search warrant was issued is simply to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. *People v. Pate,* 878 P.2d 685 (Colo.1994). Doubts concerning the existence of probable cause should be resolved in favor of the warrant in order to further the policy of encouraging police officers to obtain search warrants. *People v. Wilson,* 819 P.2d 510 (Colo.App. 1991).

■ The affidavit in this case detailed a probable identification of marijuana plants based on the eyewitness viewing of an experienced narcotics officer. *Cf. People v. McGill,* 187 Colo. 65, 528 P.2d 386 (1974) (affidavit in support of search warrant set forth probable cause where trained narcotics officer affirmatively identified plants seen growing in defendant's window as cannabis).

The accompanying information increased the likelihood that the plants were in fact contraband. The deputy saw a dark covering material behind the front window which, based on his experience and training, he believed was meant to conceal the plants and bright light from anyone approaching from the road. Also consistent with illegal marijuana cultivation were the vents, a grow light, and propane tanks. *Cf. People v. Wilson, supra,* (high electrical consumption, defendant's suspicious coming and going, musty odor, and unusual condensation on office's covered windows together gave rise to probable cause for search warrant).

Therefore, applying the controlling standards of review, we conclude that the affidavit in support of the warrant to search defendant's residence demonstrated probable cause to believe that there was contraband on the premises.

## II.

■ Finally, defendant asserts that it was error for the prosecutor to elicit testimony from a police officer to the effect that defendant had requested counsel and invoked his right to remain silent upon being advised of the right to do so. We disagree.

As defendant did not object to this testimony, it may only constitute reversible error if it rises to the level of plain error. *See* Crim. P. 52(b); *People v. Kruse,* 839 P.2d 1 (Colo.1992).

This was a trial to the court conducted apparently for the sole purpose of preserving defendant's right to appeal the suppression ruling: (1) defendant stipulated that the trial court could consider all evidence introduced in the suppression hearing in determining his guilt; (2) defendant waived opening statement and closing argument; and (3) defendant did not cross-examine the People's trial witnesses. Under these circumstances, the officer's passing reference to defendant's invocation of his rights does not constitute plain error.

Judgment affirmed.

STERNBERG, C.J., and CRISWELL, J., concur.