Matthew N. ROOK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 58A01–9609–CR–297.

Court of Appeals of Indiana.

May 16, 1997.

Matthew P. Zerbe, Lawrenceburg, for Appellant–Defendant.

Pamela Carter, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BAKER, Judge.

In this interlocutory appeal, we are presented with the question of whether a police officer's use of binoculars to view the illegal activity of a defendant in an area behind his residence constitutes an impermissible warrantless search. Specifically, appellant-defendant Matthew N. Rook appeals the trial court's denial of his motion to suppress evidence of marijuana seized after a police officer observed him carrying a marijuana plant in his backyard. Rook argues that the police officer's observations constituted an unreasonable search under the United States and Indiana Constitutions and that the subsequent warrantless seizure of the marijuana was improper.

### FACTS

At approximately 10:35 p.m. on August 9, 1995, Ohio County Deputy Sheriff Alan Althoff received an anonymous tip that Rook was growing marijuana on his property and that he would be harvesting the marijuana that evening. Deputy Althoff conveyed this information to Deputy Rodney Rimstidt, who indicated that he had received a similar anonymous phone call about Rook two days earlier. As a result, Deputy Althoff proceeded to a wooded area in Springwater Farms approximately one hundred yards away from Rook's residence in order to conduct surveillance. According to Deputy Althoff, Rook's backyard was illuminated by a security light located near a shed "significantly behind" the residence.

Shortly thereafter, Deputy Althoff observed Rook and a companion, Dale Dixon, emerge from a wooded area behind the house carrying a potted plant. With the aid of binoculars, Deputy Althoff identified the plant as marijuana. Rook and Dixon then cut several leaves from the plant and went inside the house. Several minutes later, they returned to the backyard and placed the plant in a truck. Deputy Althoff then approached Rook and Dixon, placed them under arrest and seized the marijuana.

On August 10, 1995, Rook was charged with Growing Marijuana[1] and Maintaining a Common Nuisance,[2] both Class D felonies. On October 3, 1995, Rook filed a motion to suppress the marijuana seized by Deputy Althoff, claiming that Deputy Althoff's conduct constituted an unreasonable search under both the Fourth Amendment to the United States Constitution and Article 1, § 11 of the Indiana Constitution. Alternatively, Rook argued that the subsequent warrantless seizure of the marijuana was not justified by exigent circumstances. Following a hearing, the trial court denied the motion. This interlocutory appeal followed.

## DISCUSSION AND DECISION

### I. Unreasonable Search

### A. Fourth Amendment

■ We first address whether Deputy Althoff's use of binoculars to view the area behind Rook's residence constituted an impermissible search under the Fourth Amendment to the United States Constitution. Specifically, Rook argues that Deputy Althoff's use of the binoculars to view activities occurring behind his residence, which he defines as the curtilage of his home, was unreasonably intrusive and violative of his reasonable expectation of privacy.

■ Initially, we note our standard of review. When reviewing the trial court's ruling on the validity of a search, we consider the evidence most favorable to the trial court's ruling and any uncontradicted evidence to the contrary to determine whether

there is sufficient evidence to support the ruling. *Peterson v. State,* 674 N.E.2d 528, 532 (Ind.1996). If the evidence is conflicting, we will consider only the evidence which tends to support the trial court's ruling and will affirm if the ruling is supported by substantial evidence of probative value. *Id.* at 535.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." The basic purpose of this constitutional provision is to safeguard the privacy and security of individuals against arbitrary and unreasonable government intrusions. *State v. Thomas,* 642 N.E.2d 240, 243 (Ind.Ct.App.1994), *trans. denied.* In order to implicate the Fourth Amendment's protection, however, the challenged conduct and observations of the government official must constitute a "search" in the constitutional sense. As our supreme court recently stated, "the term 'search' implies prying into hidden places for that which is concealed." *Moran v. State,* 644 N.E.2d 536, 540 (Ind.1994) (quoting *Lindsey v. State,* 246 Ind. 431, 204 N.E.2d 357, 362 (1965)).

To determine whether a search has occurred under federal law, we apply the two-part test first enunciated in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). First, we examine whether the individual has exhibited an actual, subjective expectation of privacy in the area searched and, second, whether society is willing to recognize that expectation as reasonable. *Katz,* 389 U.S. at 361, 88 S.Ct. at 516–17; *Thomas,* 642 N.E.2d at 243.

■ Rook initially contends that Deputy Althoff's observations constituted an impermissible search because the observed activities occurred in the curtilage of his home. Historically, the curtilage of the home, the area immediately surrounding the residence, has been considered within the purview of the Fourth Amendment and protected from unreasonable searches and seizures. The United States Supreme Court has explained

---

1. IND.CODE § 35–48–4–11(2).

2. IND.CODE § 35–48–4–13(b)(1).

the protection afforded the curtilage as one of "family and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most high." *California v. Ciraolo*, 476 U.S. 207, 212–13, 106 S.Ct. 1809, 1812, 90 L.Ed.2d 210 (1986). However, the mere fact that the observed activity occurred within the curtilage of the individual's home does not in itself bar police observation. *Id.* at 213, 106 S.Ct. at 1812–13. As the Court stated in *Katz*, "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351, 88 S.Ct. at 511. Similarly, it is settled law in Indiana that objects observed in open view by a police officer who is lawfully in a position to have such a view are not products of a search. *Smith v. State*, 505 N.E.2d 81, 83 (Ind.Ct.App.1987).

Here, the record reveals that Deputy Althoff first observed the marijuana when Rook emerged from the woods behind his home carrying the plant, an area clearly not linked to the intimacy of the home. The record also reveals that the area behind Rook's home was open, unfenced and illuminated by a light that was positioned "significantly behind" his house. Finally, the evidence presented by the State indicates that Rook openly carried the marijuana at all times, making it visible to anyone in the area. Therefore, given Rook's behavior and the nature of the land surrounding his home, we cannot conclude that Rook had a subjective or reasonable expectation of privacy in this area. *See Ciraolo*, 476 U.S. at 213–14, 106 S.Ct. at 1812–13 (no reasonable expectation of privacy from aerial observation of fenced-in backyard within curtilage of home given that area was visible to any member of the flying public).

■ Similarly, we cannot conclude that Deputy Althoff's use of binocular transformed his observations into an unreasonable search. Although we have not specifically addressed the use of binoculars as a surveillance aid to law enforcement officers in Indiana,[3] we have held that the use of visual aids and other sense-enhancing techniques do not change a law enforcement officer's observations into a search. *See, e.g., Marsh v. State*, 477 N.E.2d 877, 879 (Ind.1985) (police officers use of flashlight to observe items inside car did not transform observation into a search); *State v. Watkins*, 515 N.E.2d 1152, 1154–55 (Ind.Ct.App.1987) (smell testing by trained dog did not constitute search). Further, numerous other jurisdictions have approved of the use of low-powered sight enhancement devices by law enforcement officials. *See, e.g., Colorado v. Oynes*, 920 P.2d 880, 883 (Colo.Ct.App.1996) (police officer's view of interior of defendant's home with binoculars from nearby field not a search), *cert. denied; Oregon v. Carter*, 101 Or.App. 281, 790 P.2d 1152, 1155 (1990) (police officer's use of binoculars to view plant inside window of home from adjoining land not a search), *rev'd on other grounds*, 316 Or. 6, 848 P.2d 599 (1993); *Wisconsin v. Peck*, 143 Wis.2d 624, 422 N.W.2d 160, 166–67 (Ct.App. 1988) (use of binoculars to view garden plots near defendant's rural home not a search); *U.S. v. Allen*, 633 F.2d 1282, 1290–91 (9th Cir.1980) (use of aids to the senses such as binoculars does not convert unobjectionable surveillance into prohibited search).

In determining that the use of binoculars was not overly intrusive of an individual's privacy in *Carter*, the Oregon Court of Appeals noted that the use of moderate power binoculars to observe more clearly something that is already subject to scrutiny with the

---

**3.** Rook contends that in *State v. Porter*, 163 Ind. App. 509, 324 N.E.2d 857 (1975), this court held that the use of binoculars by law enforcement officers constitutes an unreasonable search. However, Rook's reliance on *Porter* is misplaced. In *Porter*, another panel of this court held that the seizure of marijuana under an illegal search warrant could not be justified under the plain view doctrine by the fact that law enforcement officers had previously seen the marijuana, through the use of binoculars, from a residence nearly two hundred yards away. Unlike *Porter*,

the instant case does not concern the ability of law enforcement officers to seize evidence of criminal activity under the plain view doctrine; rather, it concerns the issue of whether police observations of criminal activity in open view constitute a search. Further, the court in *Porter* specifically stated that "[w]e make no decision as to the propriety of the binocular observations beyond holding such conduct is not properly categorized as plain view." *Id.*, 324 N.E.2d at 858 n. 1. Under these circumstances, we do not find *Porter* to be applicable to the present case.

naked eye did not infringe upon an individual's reasonable expectation of privacy. Specifically, the court stated: "[t]he use of binoculars is not an unexpected occurrence in today's society. They are used, not only by law enforcement officers, but by citizens for hunting, spotting game, bird watching and other ordinary, lawful purposes." *Carter,* 790 P.2d at 1154. Similarly, the Colorado Court of Appeals in *Oynes* noted that a defendant could not reasonably believe that "no person with binoculars would ever view his brightly illuminated window from the surrounding fields" absent some evidence that the binoculars were uncommonly powerful. *Oynes,* 920 P.2d at 883.

Although not binding upon this court, we find the rationale employed in these cases to be persuasive. Like the window in *Oynes,* the area surrounding Rook's residence was open and highly illuminated. Further, nothing in the record indicates that the binoculars used by Deputy Althoff were extremely powerful or generally unavailable. More importantly, we note that Deputy Althoff did not use his binoculars to pry "into hidden places for that which is concealed" or observe an item that he could not have seen through his naked eye; rather, the binoculars merely allowed him to see more clearly an object that was already in open view. Under these circumstances, we hold that Deputy Althoff's use of binoculars to observe Rook's activities in the area behind his residence was not overly intrusive or violative of Rook's reasonable expectation of privacy and, as a result, did not constitute a search under the Fourth Amendment.

### B. Article I, § 11

■ Having concluded that Deputy Althoff's activities did not constitute a search under the Fourth Amendment, we must still examine the protection afforded to Rook under Article I, § 11 of the Indiana Constitution. As our supreme court recently stated, section 11 provides an independent prohibition against unreasonable searches and seizures. *Peterson v. State,* 674 N.E.2d at 533. In analyzing a search and seizure challenge under the state constitution, "the reasonableness of the official behavior must be the focus...." *Moran,* 644 N.E.2d at 539.

■ Here, the record indicates that Deputy Althoff conducted surveillance of Rook's property only after the police received two phone calls that Rook was engaged in growing marijuana and was expected to harvest it that night. Additionally, as previously mentioned, the record indicates that Deputy Althoff conducted the surveillance of Rook's open and illuminated backyard from a neighboring field approximately one hundred yards away. Although Rook contends that Deputy Althoff's activities were unreasonable because he did not ask for permission from the adjacent landowner to conduct surveillance on his land, nothing in the record indicates that the adjacent lot was fenced, contained trespassing signs, was occupied or that the owner of the lot would have objected to his presence on the land. As a result, we cannot conclude that Deputy Althoff was in an area that he was not permitted to be. *See Fisher v. State,* 259 Ind. 633, 641, 291 N.E.2d 76, 80 (1973) (entry by police upon vacant lot did not constitute search where lot was unfenced, bore no warnings against trespass and officers only stood on lot to photograph truck which was visible from road). Considering Deputy Althoff's location and the fact that he only used the binoculars to more clearly see something which was already subject to scrutiny with his naked eye, we cannot conclude that Deputy Althoff's activities were unreasonable. As a result, his observations did not constitute an impermissible search under Article I of the Indiana Constitution.

### II. Seizure

■ Finally, Rook contends that, even if the warrantless view of the marijuana was lawful, the warrantless seizure was not. Specifically, Rook argues that even if Deputy Althoff feared that he was about to leave the premises after placing the marijuana plant in his truck, he should have stopped him on a public road, instead of at his home, because "there is a lesser expectation of privacy while on a public thoroughfare in an automobile." Appellant's Brief at 11.

Under the Fourth Amendment and Article I, § 11, the seizure of evidence must be supported by a judicially-issued warrant unless exigent circumstances exist which place the seizure within certainly narrowly-defined exceptions. *Hawkins v. State,* 626 N.E.2d 436, 439 (Ind.1993). One such exception permits the State to seize evidence when law enforcement officers believe that the evidence may be destroyed or removed before a search warrant may be obtained. *Id.*

Here, the record reveals that shortly after Rook removed several leaves from the marijuana plant and placed them in his house, he picked up the plant, moved towards his truck and placed it in the back. After observing Rook place the marijuana in his truck and fearing that Rook was preparing to leave, Deputy Althoff entered Rook's property, placed him under arrest and seized the marijuana. Although Rook contends that Deputy Althoff should have waited to seize the plant until after Rook left the property, he fails to cite any authority which supports his argument. Further, we fail to understand why a law enforcement officer who observes a suspect preparing to leave with evidence should be required to give the suspect an opportunity to escape before seizing the evidence. Under the circumstances, we conclude that Deputy Althoff had a reasonable belief that the marijuana was about to be lost or destroyed and, as a result, properly seized the evidence.[4] The trial court did not err in denying Rook's motion to suppress.

Denial of motion to suppress affirmed.

ROBERTSON and RUCKER, JJ., concur.

---

4. Rook also argues that the seizure was improper because it was based on an illegal search in that Deputy Althoff was not legally on the premises to conduct surveillance. Having already determined that the search was proper, however, we need not address this argument.