**Deputy Redford EARLES, et al., Appellants–Defendants,**

v.

**Jeffrey PERKINS, Appellee–Plaintiff.**

No. 49A02–0206–CV–484.

Court of Appeals of Indiana.

May 29, 2003.

Robin M. Lybolt, Assistant Corporation Counsel, Indianapolis, IN, Attorney for Appellants.

Michael K. Sutherlin, Law Office of Michael K. Sutherlin & Associates, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Jeffrey Perkins ("Perkins") filed a complaint against Redford Earles ("Earles"), Sean Jones ("Jones"), and the Marion County Sheriff's Department ("MCSD") in Marion Superior Court, alleging false arrest and false imprisonment under state and federal law. The Defendants moved for summary judgment, asserting qualified immunity and that the undisputed facts entitled them to summary judgment. The trial court denied this motion, and the Defendants now seek to reverse the trial court by way of interlocutory appeal.

The parties present the following restated issues for review:

I. Whether the undisputed facts entitle Earles and Jones, in their individual capacities, to summary judgment; and,

II. Whether Earles and Jones are entitled to qualified immunity.

Finding that the undisputed facts do not entitle Earles and Jones to summary judgment and that Earles and Jones are not immune, we affirm in part and reverse in part.[1]

### Facts and Procedural History

On Friday, May 8, 1998, Perkins left work at 5:30 p.m. and began his daily commute home on Interstate 465 ("I-465"). As Perkins approached I-465's Rockville Road Exit, he was passed by a MCSD patrol car that was traveling in the left most lane of I-465 with its emergency lights on.

According to Perkins, the patrol car then cut across four lanes of I-465 traffic

---

1. Perkins renounced his 42 U.S.C. section 1983 and punitive damage claims against the MCSD. Br. of Appellee at 8–9, 19–20; Appellants' App. p. 70. However, the trial court's order appears to have denied the Appellants' motion to dismiss Perkins' 42 U.S.C. section 1983 and punitive damage claims against the MCSD. Appellants' App. pp. 7, 9, 190–91. As such, we reverse this portion of the trial court's order.

The Appellants also contend Perkins has conceded, "both directly and implicitly by failure to address [Appellants'] arguments, that the [MCSD] is entitled to summary judgment in its favor regarding [Perkins'] state law claims for false arrest and false imprisonment." Reply Br. of Appellants at 1. Though the Appellants have successfully asserted that the MCSD is neither liable under 42 U.S.C. section 1983 nor subject to punitive damages, the Appellants have failed to make an independent argument asserting that the MCSD is not liable for, or is immune from, compensatory damages under state law. Br. of Appellants at 6–15. If the argument found on page twelve of the Appellants' brief refers to Perkins' state law claims against the MCSD—despite the argument's failure to specifically reference the MCSD and the argument's location under Earles and Jones' individual liability subheading—the argument, to the extent it is premised on probable cause, is unsuccessful in establishing immunity for the MCSD. See footnote 9, infra. Perkins' direct concession, though far from clear, refers to his 42 U.S.C. section 1983 and punitive damage claims, not his state law compensatory damages. Br. of Appellee at 8, 19–20; Appellants' App. p. 70. Because Appellants, who have the burden of proof, failed to argue that the MCSD is entitled to summary judgment on Perkins' compensatory state law claims, the MCSD is not entitled to summary judgment on this issue.

and, when it entered the exit ramp for Rockville Road, cut off Perkins and another vehicle, which was entering the merge ramp of I–465, forcing both Perkins and the driver of the other vehicle to brake quickly, nearly causing an accident. Appellants' App. pp. 92, 96, 105. While Perkins was braking, he believed there would be a collision because there was no place for him to maneuver his vehicle. Perkins was angered at the patrol car's maneuver and believed the allegedly unsafe driving to be an unnecessary danger to the public. Appellants' App. p. 106.

The patrol car was driven by Earles, and Deputy Arnes ("Arnes") was a passenger in the vehicle. Both Earles and Arnes were reserve deputies in the MCSD, and their duties were limited to traffic spotting on the day in question. Appellants' App. p. 90. Despite having been assigned these limited duties, when Earles learned of an accident on Rockville Road, he decided to go to the scene of the accident to "assist with traffic control." Appellants' App. p. 118. While en route during rush hour to assist with traffic control, Earles drove his patrol car at speeds in excess of 100 miles per hour. Appellants' App. pp. 93, 107. During the drive, Arnes informed Earles that they were not permitted to exceed the scope of their duties by responding to the accident, that Earles was not allowed to exceed the speed limit for reasons of assisting in traffic control, and that Earles' driving was unsafe. Appellants' App. p. 118.

After Perkins was allegedly cut off by Earles, he took his usual exit off I–465 onto Rockville Road. While on Rockville Road, Perkins observed the patrol car that cut him off and three deputies near the scene of an accident. As Perkins was driving by the accident, he asked a deputy—later identified as Earles—if he was the deputy that had cut him off on I–465.

Earles informed Perkins that he was the deputy. Perkins then informed Earles that he believed his driving was reckless, dangerous, and caused a serious risk of harm to himself and the occupants of other vehicles. Earles responded by ordering Perkins to pull to the side of the road.

After Perkins complied with this order, Earles approached Perkins' vehicle. Earles noticed that Perkins had bloodshot eyes and asked Perkins if he had been drinking. Perkins informed Earles that he had not been drinking and that his eyes were bloodshot because he had pinkeye. Perkins then allegedly offered to corroborate this claim by showing Earles his prescription that was in his glove compartment. Appellants' App. p. 108.

Following this dialog, Perkins drew a diagram of how Earles drove his patrol car on I–465. Earles informed Perkins that he was allowed to drive in such a manner because he was an emergency vehicle and other vehicles must yield the right-of-way to him. Appellants' App. p. 109. Perkins responded by noting that he did yield the right-of-way and asked Earles for his name and badge number so that he could file a complaint with the MCSD. Earles gave Perkins his name and badge number, and Perkins wrote this information down on a piece of paper that was in his vehicle. Appellants' App. 109.

Immediately thereafter, Earles demanded Perkins' drivers license and vehicle registration. Perkins responded by asking "what for?" Earles repeated his demand. As Perkins was allegedly reaching for his identification, a second deputy, later identified as Jones, approached Perkins' vehicle, opened Perkins' door, and told Perkins to get out of his vehicle because he was under arrest. As Perkins leaned over to get out of his vehicle, Jones grabbed him by the arm and pulled him out of his

vehicle by his shirt.[2] Jones then bent Perkins over his vehicle and handcuffed him. Appellants' App. p. 110.

Perkins was transported to Marion County lockup—where he was allegedly not allowed to tell his family his whereabouts for six hours and was kept for thirteen hours,[3] charged with disorderly conduct[4] and refusal to identify,[5] and his vehicle was towed. After Perkins was released from lockup and had retrieved his vehicle, he allegedly noticed that Earles' name and badge number had been scratched off the piece of paper that Perkins had recorded this information onto. Appellants' App. p. 109.

On May 18, 1998, in a hearing not attended by Perkins, Earles, or Jones, a criminal court found probable cause for the arrest of Perkins and set the cause for trial. Appellants' App. p. 111. However, the State subsequently dismissed the charges against Perkins on August 11, 1998 because Earles was no longer with the MCSD and apparently unavailable to testify. Appellants' App. p. 114. Perkins then successfully moved to have his arrest record expunged. Appellants' App. pp. 112, 115.

Perkins filed a complaint against Earles, Jones, and the MCSD on February 8, 1999, alleging state and federal causes of action for false arrest and false imprisonment. Perkins' complaint seeks compensatory and punitive damages for the alleged malicious and wanton violation of his rights protected by the United States and Indiana Constitutions and damages for the intentional infliction of emotional distress.

Appellants' App. pp. 24–26. The Appellants moved to dismiss Perkins' complaint by way of summary judgment, asserting immunity and that the undisputed facts entitle them to summary judgment. The trial court denied this motion and the Appellants now appeal.[6]

### Decision and Discussion

When reviewing a grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Catt v. Bd. of Comm'rs,* 779 N.E.2d 1, 3 (Ind.2002) (citing *Ind. Univ. Med. Ctr. v. Logan,* 728 N.E.2d 855, 858 (Ind.2000)). Summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing *Corr v. Am. Family Ins.,* 767 N.E.2d 535, 537 (Ind.2002)). All facts and reasonable inferences drawn therefrom are construed in favor of the nonmoving party. *Id.*

### I. Earles and Jones' Liability under State and Federal Law

 Under federal law, the existence of probable cause for an arrest is an absolute bar to a 42 U.S.C. section 1983 claim for unlawful arrest. *Potts v. City of Lafayette,* 121 F.3d 1106, 1113 (7th Cir.1997) (citing *Smith v. City of Chicago,* 913 F.2d 469, 473 (7th Cir.1990)). The determination of probable cause is a mixed question of law and fact. *Ornelas v. United States,*

---

**2.** Jones admits to seeing Perkins reach for his identification before he pulled Perkins out of his vehicle. Appellants' App. p. 101.

**3.** Appellants' App. p. 23.

**4.** Ind.Code § 35–45–1–3 (1998).

**5.** Ind.Code § 34–4–32–3 (West 1998), now Ind.Code § 34–28–5–3.5 (1999).

**6.** Appellants filed a Motion to Strike Appellee's Appendix for failure to comply with Indiana Appellate Rule 50(A)(3). Said motion is granted.

517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). When facts sufficient to create probable cause are undisputed, probable cause is a question of law. *Cervantes v. Jones*, 188 F.3d 805, 811 (7th Cir.1999) (citing *Potts*, 121 F.3d at 1112). Summary judgment is appropriate in a probable cause determination when there is no room for difference of opinion about the facts or the inferences to be drawn therefrom. *Lanigan v. Village of East Hazel Crest* 110 F.3d 467, 473 (7th Cir. 1997) (citing *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir.1994)).

 An officer has probable cause to arrest "when the totality of the facts and circumstances within his [or her] knowledge, and of which he [or she] has reasonably trustworthy information, is sufficient that a prudent person would believe that the suspect committed or was committing an offense." *Marshall v. Teske*, 284 F.3d 765, 770 (7th Cir.2002) (citing *United States v. Sawyer*, 224 F.3d 675, 678–79 (7th Cir.2000)). We evaluate probable cause not from the perspective of an omniscient observer but on the facts as they would have appeared to a reasonable person in the position of the arresting officer. *Id.*

 Under Indiana law, false imprisonment is defined as the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent. *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind.Ct.App.2002) (citing *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 967 (Ind.Ct.App.2001)). A defendant may be liable for false arrest when he or she arrests a plaintiff in the absence of probable cause to do so. *Id.* (citing *Conwell v. Beatty*, 667 N.E.2d 768, 775 (Ind.Ct.App.1996)). Probable cause for arrest is demonstrated by facts and circumstances known to the arresting officer that would warrant a person of reasonable caution and prudence to believe that the accused had committed or was committing a criminal offense. *Id.*

Thus, both Indiana and federal law require the court to determine if there was probable cause for arrest, and both base the probable cause determination on whether a reasonable person, under the facts and circumstances encountered by the arresting officer, would believe that the suspect had committed or was committing a criminal offense. We find the undisputed facts in this case fail to reveal circumstances that would lead a reasonable person to believe that Perkins engaged in disorderly conduct or committed the offense of refusal to identify.

A person engages in disorderly conduct when they recklessly, knowingly, or intentionally engage in fighting or tumultuous conduct, or makes unreasonable noise and continues to do so after being asked to stop. Ind.Code § 35–45–1–3. As the moving party, the Appellants have failed to offer any facts that suggest that there was probable cause to believe Perkins committed any of the elements of disorderly conduct. Br. of Appellants at 10–12. The undisputed facts reveal neither tumultuous nor fighting behavior on the part of Perkins. There seems to be some suggestion on the part of the Appellants that Perkins disrupted traffic while attempting to ascertain Earles' name and badge number. Br. of Appellants at 14. However, there are no undisputed facts in the record which indicate that traffic was so much as stopped briefly as a result of Perkins' inquiry-much less was delayed to the point that would constitute probable cause for tumultuous behavior. Furthermore, the undisputed facts reveal no delay in Perkins' compliance with Earles' command to pull to the side of the road. Appellants' App. p. 107. Finally, the undisputed facts reveal neither unreasonable noise on the part of Perkins nor a request on the part

of the deputies for Perkins to stop making unreasonable noise.

A person commits the offense of refusal to identify when he or she knowingly or intentionally refuses to provide either their name, address, and date of birth, or drivers license to a law enforcement officer who has stopped the person for an infraction or ordinance violation. Ind.Code § 34–4–32–3, now Ind.Code § 34–28–5–3.5. The undisputed facts fail to establish probable cause to arrest Perkins for refusal to identify. Jones admits that he saw Perkins reaching for his identification when he dragged Perkins out of his car; thus, the undisputed facts do not establish probable cause for the refusal to provide identification element. Appellants' App. p. 101. This offense also requires the suspect to have been stopped "for an infraction or ordinance violation." Ind.Code § 34–4–32–3, now Ind.Code § 34–28–5–3.5. The undisputed facts reveal no infraction or ordinance violation. Because the Appellants failed to demonstrate undisputed facts that show probable cause to believe that Perkins committed an infraction, ordinance violation, or refused to provide his identification, we cannot say, as a matter of law, that Earles or Jones had probable cause to arrest Perkins on the basis of refusal to identify.

The Appellants, as the moving party, have the burden of demonstrating that the facts and circumstances prior to Perkins' arrest were such as would lead a reasonable person to believe Perkins was committing or about to commit an offense. No such facts have been offered by the Appellants.[7] Rather the facts show that Perkins complied with Earles command to move his vehicle to the side of the road and Jones saw Perkins reaching for his identification before he was pulled from his vehicle. Appellants' App. pp. 101, 107. Furthermore, the allegation that Earles name and badge number were scratched off the piece of paper that Perkins had recorded this information onto might constitute evidence of an ulterior motive for the arrest of Perkins.[8]

## II. Qualified Immunity

Government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citing *Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978)). To determine whether an official's conduct violates clearly established law requires a two-step inquiry. *Biddle v. Martin,* 992 F.2d 673, 675 (7th Cir.1993) (citing *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727). The plaintiff must first show that the law was clear in relation to the specific

---

7. Appellants rely heavily on the criminal court's initial finding of probable cause to arrest Perkins, and Perkins relies heavily on the success of his motion to have his arrest record expunged. Neither the Appellants nor Perkins is attempting to use, or could use, either adjudication for collateral estoppel purposes, and we find neither of the two adjudications to have been sufficiently litigated to have any effect on the outcome of this appeal.

8. Appellants claim in their reply brief that Indiana Code section 34–13–3–5(a) does not allow Perkins to bring suit against Earles and Jones because Perkins admits that Earles and Jones were acting within the scope of their employment. Reply Br. of Appellants at 4. Consequently, the Appellants state that the only way Perkins could prevail under his state law claims is to allege malicious or wanton conduct and include a reasonable factual basis supporting the allegations. *Id.* However, Perkins has alleged malicious and wanton conduct on the part of Earles and Jones and has set forth a reasonable factual basis supporting this allegation. Appellants' App. pp. 21–26.

facts confronting the public official when he or she acted. *Id.* Second, we evaluate the objective reasonableness of the official's conduct. *Id.* When making the second inquiry, we consider whether reasonably competent officials would agree on the application of the clearly established right to a given set of facts. *Id.*

For the first step of the inquiry, it has long been established that an officer cannot make a warrantless arrest without probable cause. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Under the facts and circumstances set out in the record, probable cause was unquestionably required to make an arrest of Perkins.

In relation to the second step of the inquiry, the Appellants contend that the actions of Earles and Jones were proper because Earles and Jones had probable cause to make an arrest and that, even if there was not probable cause, Earles and Jones' actions were reasonable in light of the circumstances. Br. of Appellants at 14. As discussed in the previous section of this opinion, the undisputed facts fail to show probable cause to arrest Perkins, and the undisputed facts reveal no conduct on the part of Perkins that would lead a reasonably competent police officer to conclude that there were grounds to arrest Perkins for disorderly conduct or refusal

to identify. *See Biddle,* 992 F.2d at 675 (noting that when determining the second prong of qualified immunity, we evaluate the objective reasonableness of the officers' acts and grant qualified immunity if "a reasonable officer could have believed the arrest to be lawful, in light of the clearly-established law and the information that the arresting officer possessed").[9]

The Appellants also assert that Earles and Jones are entitled to qualified immunity because "[w]hen asked for identification ... [Perkins] was argumentative and refused to provide the information to the deputies." Br. of Appellants at 14. It is neither undisputed that Earles and Jones had a reasonable belief in their right to demand Perkins' identification on the threat of arrest in the first place nor that Perkins refused to provide his identification to them. *See* Appellants' App. p. 101.

We find that Perkins had the right to be free from arrest absent a showing of probable cause and that the undisputed facts fail to indicate that a reasonable officer, under the facts and circumstances presented to Earles and Jones, could have believed Perkins' arrest to be lawful.[10] For all of these reasons, Earles and Jones are not entitled to qualified immunity.

### Conclusion

Perkins has effectively renounced his 42 U.S.C. section 1983 and punitive damage

---

9. The Appellants contend that Earles and Jones are immune under state law on the premise that probable cause existed at the time of Perkins' arrest. Br. of Appellants at 12; *see also* Ind.Code § 34–13–3–3(8) (noting that a government entity or government employee acting within the scope of the employee's employment is not liable if a loss results from the enforcement of a law, unless the act of enforcement constitutes false arrest or false imprisonment). Consequently, the failure of the undisputed facts to disclose probable cause for Perkins' arrest necessarily defeats Appellants' claim, as argued, that Earles and Jones possess immunity from Perkins' State law tort claims.

10. Perkins concedes that he is not entitled to punitive damages against the MCSD. Br. of Appellee at 19–20. Appellants claim that Perkins is also not entitled to punitive damages against Earles and Jones, in their individual capacities, because Earles and Jones are entitled to summary judgment. Br. of Appellants at 15. This argument is circular, and we note that plaintiffs may pursue punitive damages against individual defendants in a 42 U.S.C. section 1983 action. *See Smith v. Wade,* 461 U.S. 30, 35, 36, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

claims against the MCSD. However, Earles and Jones are not entitled to qualified immunity, and the undisputed facts do not entitle the Appellants to summary judgment. Accordingly, we affirm in part and reverse in part.

KIRSCH, J., and MATTINGLY–MAY, J., concur.