In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3324

SUSAN M. BENTZ,

*Plaintiff-Appellant,*

*v.*

CITY OF KENDALLVILLE, MIKE MCCANN,
LANCE WATERS, L. RICHARDSON, and
DOUGLAS M. DAVIS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 07 CV 121—**William C. Lee**, *Judge.*

ARGUED MAY 11, 2009—DECIDED AUGUST 14, 2009

Before CUDAHY, POSNER, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* On May 3, 2006, officers of the
Kendallville Police Department entered the home of
Dr. Bernard Leonelli without a warrant, arrested him,
and searched his home for potential domestic violence
victims. Leonelli brought suit against the City of

Kendallville and individual police officers[1] alleging various Indiana tort claims and violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983. The district court granted summary judgment to the defendants. While this appeal was pending, Leonelli passed away from causes unrelated to the lawsuit, and Susan Bentz became his personal representative. The city moved to dismiss the appeal, claiming that none of Leonelli's claims survived his death. Bentz, meanwhile, moved that we certify the question of survival to the Indiana Supreme Court. Because we find that Indiana law establishes that Leonelli's claims do not survive, we grant the city's motion to dismiss the appeal and deny Bentz's motion to certify questions of state law.

## I. BACKGROUND

On May 3, 2006, in response to two 911 calls reporting a domestic dispute, the Kendallville Police Department dispatched officers to the home of Dr. Bernard Leonelli.[2] Officer Douglas Davis approached the residence in his patrol car and observed a large fire on the lawn. As

---

[1] Because all of the defendants' arguments are identical for the purposes of this appeal, we refer to them collectively as "the city."

[2] We provide only a brief summary of the underlying incident because these facts are largely irrelevant to the survivability of Leonelli's claims. For a complete account of the facts in this case, see *Leonelli v. City of Kendallville*, No. 1:07 CV 121, 2008 WL 3874701, at *2-4 (N.D. Ind. Aug. 15, 2008).

he got out of the patrol car, onlookers informed him that a fight was occurring in the residence.

Davis approached the house, where Leonelli was standing on the front porch. Davis identified himself and instructed Leonelli to come talk to him. Leonelli shook his head, turned, and walked into the house. Davis continued toward the door, but Leonelli kept walking away. Davis then observed Leonelli reach for something that Davis could not see, prompting him to enter the house and arrest Leonelli.

Other officers arrived at the scene and searched the residence for victims of domestic violence. Leonelli contended that the officers went through several drawers in his home and searched his computers, while the officers claimed that they searched only areas where they believed they might find a person.

Leonelli sued the city and the individual officers involved in his arrest and search. His complaint alleged that the defendants had violated his rights under the Fourth and Fourteenth Amendments. *See* 42 U.S.C. § 1983. Specifically, Leonelli claimed that (1) his arrest was without probable cause and constituted an unreasonable seizure, and (2) the officers' entry and search of his home without a warrant was an unreasonable search and trespass. Leonelli also raised several state tort claims, including false arrest, malicious prosecution, and trespass.

The district court granted summary judgment to the defendants, holding that they were immune from liability under both federal and state law. Leonelli filed a notice of appeal. He later died on September 28, 2008. Bentz,

Leonelli's personal representative, continued to prosecute this appeal on his behalf.

## II. ANALYSIS

The city filed a motion to dismiss Bentz's appeal, arguing that Leonelli's claims did not survive his death. After concessions by the appellant, the only claims before us are those brought under § 1983. That statute is silent on the issue of survival, so 42 U.S.C. § 1988 directs us to "look to the most closely analogous state law to determine survivability." *Bass ex rel. Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985); *see also Robertson v. Wegmann*, 436 U.S. 584, 588-91 (1978); *Anderson v. Romero*, 42 F.3d 1121, 1123 (7th Cir. 1994). When analyzing the survivability of § 1983 claims, we therefore apply the state survival statute unless it is inconsistent with federal policy. *Anderson*, 42 F.3d at 1123. Bentz does not claim that the application of state law in this case is inhospitable to the purpose of § 1983 actions, so we apply Indiana law in deciding whether Leonelli's claims survived. *Robertson*, 436 U.S. at 594.

In order to apply Indiana law, we must properly analogize Leonelli's § 1983 claims to the appropriate Indiana torts. In doing so, we begin with the federal claim at issue. *Bass*, 769 F.2d at 1188. We must first characterize that claim and then decide which Indiana tort is the most similar, without molding the constitutional claim to fit within the contours of state law. *Id.* After arriving at an appropriate analogy, we turn to the Indiana

survival statute to determine whether that claim should survive. *See* Ind. Code § 34-9-3-1.

Bentz presents two Fourth Amendment claims on Leonelli's behalf. The first is an illegal seizure/false arrest claim arising from the warrantless arrest. The second is based on the allegedly unlawful entry and "trespass" into Leonelli's home. After considering the elements required to establish each federal cause of action, we hold that neither claim survives under Indiana law.

### A. Illegal Seizure/False Arrest

In his complaint, Leonelli averred that the police lacked probable cause and that his arrest was therefore an unreasonable seizure in violation of the Fourth Amendment. The city argues that this claim is analogous to the Indiana tort of false imprisonment, which does not survive death.[3] Bentz, meanwhile, contends that Leonelli's claim was similar to the distinct tort of unlawful arrest, or that, in the alternative, Indiana law is unclear and we should certify the question to the Indiana Supreme Court. *See* 7th Cir. R. 52(a); Ind. R. App. P. 64 (providing

---

[3] The Indiana survival statute provides a comprehensive list of claims that do not survive death: (1) libel, (2) slander, (3) malicious prosecution, (4) false imprisonment, (5) invasion of privacy, and (6) personal injuries to the deceased party. Ind. Code § 34-9-3-1. All other personal causes of action survive and may be brought by the decedent's representative. *See id.*

that federal courts may certify a question of law to the Indiana Supreme Court when it appears that the case "presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent").

We begin by discussing the requirements for Leonelli's federal cause of action. To prevail under § 1983 for this claim, Bentz must establish that the government's conduct constituted a seizure and that the seizure was unreasonable. *Bielanski v. County of Kane*, 550 F.3d 632, 637 (7th Cir. 2008). Under the Fourth Amendment, a person has been seized "'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Tom v. Voida*, 963 F.2d 952, 956-57 (7th Cir. 1992) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). We have also referred to a seizure for Fourth Amendment purposes as "an intentional limitation of a person's freedom of movement." *Bielanski*, 550 F.3d at 637. Where an arrest occurs without probable cause, the plaintiff may bring a claim for unreasonable seizure. *See A.M. v. Butler*, 360 F.3d 787, 798 (7th Cir. 2004).

The standards for false imprisonment in Indiana are remarkably similar. "Under Indiana law, false imprisonment is defined as the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003). As with the Fourth Amendment, where the police arrest a suspect without probable cause, they can be held liable for false imprisonment.

*Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002).

In other words, a plaintiff may establish both a § 1983 claim and an Indiana false imprisonment claim where his freedom of movement was limited or restrained in some way without probable cause. *See Bielanski*, 550 F.3d at 637; *Earles*, 788 N.E.2d at 1265 ("[B]oth Indiana and federal law require the court to determine if there was probable cause for arrest . . . ."); *Miller*, 777 N.E.2d at 1104. The elements of the causes of action are nearly identical, and Leonelli could have framed his claim in terms of the Indiana tort of false imprisonment, federal law, or both.

Bentz relies in part on *Row v. Holt*, 834 N.E.2d 1074 (Ind. Ct. App. 2005), *vacated*, 864 N.E.2d 1101 (Ind. 2007), for her argument that false arrest and false imprisonment are distinct torts under Indiana law. She is correct that, as *Row* observed, distinctions exist between the two in certain cases. *See id.* at 1088-89. But further examination of *Row* reveals compelling support for the city's position. Although the court noted that the two torts are different insofar as an imprisonment can be made absent an arrest, it went on to emphasize that "[a] false arrest is one means of committing a false imprisonment, and *every false arrest has, at its core, a false imprisonment.*" *Id.* at 1089 (emphasis added) (quotations omitted). The court therefore determined that because the plaintiff's false imprisonment claim involved an alleged false arrest,

it required no separate analysis. *Id.*[4]

Indeed, Indiana courts have used the terms "false arrest" and "false imprisonment" interchangeably when a plaintiff's claim stems from detention by authorities without probable cause. *See, e.g.*, *Johnson v. Blackwell*, 885 N.E.2d 25, 30-31 (Ind. Ct. App. 2008) (using the terms interchangeably when distinguishing both from malicious prosecution); *Earles*, 788 N.E.2d at 1265 (defining false imprisonment under Indiana law and holding that "[a] defendant may be liable for false arrest when he or she arrests a plaintiff in the absence of probable cause"); *Miller*, 777 N.E.2d at 1104-05 (equating what a "plaintiff in a false arrest action" must demonstrate with the standard for "false imprisonment"). Perhaps more tellingly, Indiana courts often analyze causes of actions involving unlawful police detentions *solely* in terms of false imprisonment. *See, e.g.*, *Trobaugh v. Hellman*, 564 N.E.2d 285, 286-87 (Ind. Ct. App. 1990); *Delk v. Bd. of Comm'rs of Del. County*, 503 N.E.2d 436, 439 (Ind. Ct. App. 1987); *Grooms v. Fervida*, 396 N.E.2d 405, 411-12 (Ind. Ct. App. 1979); *Mitchell v. Drake*, 360 N.E.2d 195, 198 (Ind. Ct. App. 1977) (discussing the standard the Seventh Circuit has applied "in false imprisonment actions against government agents under the Fourth Amendment").

---

[4] Although this opinion was subsequently vacated, we find this analysis persuasive because the Indiana Supreme Court affirmed that no separate analysis was required for false arrest and false imprisonment. *See* 864 N.E.2d at 1016 n.4.

In other words, Indiana courts have analyzed claims similar to Leonelli's under the false imprisonment framework. As such, Indiana law establishes that Leonelli's § 1983 claim for unreasonable seizure is analogous to an Indiana tort claim for false imprisonment, which does not survive a decedent's death. *See* Ind. Code § 34-9-3-1.

We emphasize that this holding does not rest on the notion that Leonelli's *factual* allegations could satisfy either legal claim because, as we shall soon discuss, identical facts can often give rise to multiple torts.[5] Instead, we base our decision on the similarities between the elements of Fourth Amendment unreasonable seizure and Indiana unlawful imprisonment claims. It is due to these legal similarities that Leonelli's appeal of this claim must be dismissed.

### B.  Unlawful Entry into Leonelli's Home

Leonelli's next § 1983 claim challenged the police officers' warrantless entry and search of his home. On appeal, Bentz focuses solely on the allegedly illegal entry and abandons the challenge to the search.[6] She argues that

---

[5] Throughout this opinion, we assume that the entry into Leonelli's home was without probable cause and therefore would indeed form the basis of a cause of action. Because we dismiss the appeal, we need not decide whether probable cause in fact existed.

[6] Counsel made this concession at oral argument. We presume the remaining claim is found in Paragraph 9 of the second

(continued...)

because this claim rests on the physical entry into Leonelli's home, it is akin to trespass, which survives under Indiana law.[7] *See* Ind. Code § 34-9-3-1. The city, on the other hand, compares Leonelli's claim to the Indiana tort of invasion of privacy, which does not survive. *See id.*

At first blush, this appears to be a difficult question because the facts of this case potentially implicate both torts. To prove trespass under Indiana law, a plaintiff need only show that he was in possession of the land and that the defendant entered that land without right. *Garner v. Kovalak*, 817 N.E.2d 311, 313 (Ind. Ct. App. 2004). On the other hand, invasion of privacy can take the form of "an intrusion upon the plaintiff's physical solitude or seclusion as by invading his home or conducting an illegal search." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991).[8] Restricting the question to the officers' illegal

---

[6] (...continued)

amended complaint, which averred that "[d]efendants . . . committed trespass . . . in violation of the Plaintiff's Fourth Amendment Rights, when they entered into . . . Dr. Leonelli's home without warrant or sufficient legal justification, all in violation of the tort laws and public policies of the State of Indiana."

[7] Bentz again requests that we certify this question to the Indiana Supreme Court, but we do not believe that there is any uncertainty in applicable Indiana law. *See* Ind. R. App. P. 64.

[8] Invasion of privacy can take one of four forms: appropriation, intrusion, public disclosure of private facts, and false

(continued...)

entry into Leonelli's home, it seems that the complaint's allegations could form a basis for either claim.

But Indiana tort law and the facts of this individual case are not at the core of our analysis—we must begin with the federal claim at issue. *See Bass*, 769 F.2d at 1188. Only after characterizing the federal claim do we decide which analogous Indiana tort applies. *See id.* And federal law makes clear that the crux of a Fourth Amendment claim of this nature, whether framed as an unlawful search, an unreasonable entry into the home, or any other similar action, is invasion of privacy. *See, e.g., United States v. Henderson*, 536 F.3d 776, 786 (7th Cir. 2008).

The Supreme Court has stated that "a fundamental purpose of the Fourth Amendment is to safeguard individuals from unreasonable government invasions of legitimate privacy interests." *United States v. Chadwick*, 433 U.S. 1, 11 (1977), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991). Thus, to bring a Fourth Amendment action for an unlawful search (or entry), a plaintiff must have a legitimate expectation of privacy that society recognizes as reasonable. *California v. Ciraolo*, 476 U.S. 207, 211 (1986); *United States v. Sandoval-Vasquez*, 435 F.3d 739, 743 (7th Cir. 2006). As federal and Indiana courts have repeatedly recognized, this expectation of privacy is the hallmark of Fourth Amendment analysis. *See, e.g., Michael C. v. Gresbach*, 526 F.3d 1008,

[8] (...continued)
light in the public eye. *Cullison*, 570 N.E.2d at 31. Only intrusion is applicable here.

1014-15 (7th Cir. 2008); *Membres v. State*, 889 N.E.2d 265, 269 (Ind. 2008); *Trimble v. State*, 842 N.E.2d 798, 801 (Ind. 2006); *Rook v. State*, 679 N.E.2d 997, 999 (Ind. Ct. App. 1997) ("The basic purpose of [the Fourth Amendment] is to safeguard the privacy and security of individuals against arbitrary and unreasonable government intrusions."). It is, therefore, the government's unlawful *invasion* of this privacy that gives rise to a Fourth Amendment violation.

Bentz draws our attention to Supreme Court precedent that emphasizes the importance of a man's home, noting that " 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " *New York v. Harris*, 495 U.S. 14, 18 (1990) (quoting *Payton v. New York*, 445 U.S. 573, 585 (1980)); *see also Kyllo v. United States*, 533 U.S. 27, 40 (2001). Because of the home's importance, Bentz argues that trespass is the most closely analogous tort.

We are mindful that the home occupies a special place in Fourth Amendment jurisprudence. But the reasoning behind this principle is straightforward—individuals have a particularly high expectation of *privacy* in their homes. As the Court recognized, in no setting "is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Payton*, 445 U.S. at 590. This makes the home distinct from property in plain view, of which seizures and searches involve no invasion of privacy. *Id.* at 586-87.

Furthermore, although the Supreme Court has often expressed concern for protecting "the sanctity of a man's

home," *id*. at 585 (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)), it has, with equal vigor, emphasized that "the Fourth Amendment protects people, not places," *Katz v. United States*, 389 U.S. 347, 351 (1967). It is for this reason that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* (citations omitted). Thus, the Supreme Court long ago abandoned the "trespass" doctrine, holding that a Fourth Amendment violation could occur even without a physical intrusion onto the plaintiff's property. *Id.* at 353 ("[T]he reach of [the Fourth] Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure.").

Thus, the threshold question in a Fourth Amendment inquiry is not whether a trespass occurred, *Sayre v. State*, 471 N.E.2d 708, 713 (Ind. Ct. App. 1984) (citing *United States v. Conner*, 478 F.2d 1320 (7th Cir. 1973)); *see also United States v. Hanahan*, 442 F.2d 649, 654 (7th Cir. 1971) (noting that the police officer had committed "no more than a technical trespass," which did not give rise to a Fourth Amendment violation); it is whether the government violated the plaintiff's privacy interest. The Indiana tort of invasion of privacy, in the form of intrusion, has the same focus: the plaintiff must show "an intrusion upon [his] physical solitude or seclusion." *Cullison*, 570 N.E.2d at 31. In contrast, to succeed in a trespass claim, a plaintiff need not establish any privacy interest; he must show only that he was in possession

of the land. *See Garner*, 817 N.E.2d at 313 ("[I]t is necessary for the plaintiff to prove *only* that he was in possession of the land and that the defendant entered thereon without right . . . ." (emphasis added) (alteration in original) (quotations omitted)).

We do not doubt that if the police lacked probable cause to enter Leonelli's home, the facts he alleged could form the basis for either Indiana tort. But as explained above, we must be careful when conducting our analysis not to distort the federal claim to fit within the confines of a particular state law. *See Bass*, 769 F.2d at 1188. Federal law is clear that the core of a Fourth Amendment claim is an expectation of privacy. This concern is also at the center of an invasion of privacy claim under Indiana law, but it is completely irrelevant in a trespass case. For that reason, the most analogous state tort to Leonelli's unlawful entry claim is invasion of privacy, which does not survive under the Indiana survival statute. *See* Ind. Code § 34-9-3-1.

### III. CONCLUSION

Nothing in our opinion requires that we resolve a question of state law on which there is no clear controlling Indiana precedent. For that reason, Bentz's motion to certify questions of law to the Indiana Supreme Court is DENIED.

Leonelli's federal claim for unreasonable seizure would be treated under Indiana law as a false imprisonment claim; his unlawful entry Fourth Amendment claim is

analogous to the Indiana tort of invasion of privacy. Because neither tort survives under Indiana law, the appellees' motion to dismiss the appeal is GRANTED.