Richard ORBAN and Janet Orban,
Appellants–Plaintiffs,

v.

Dana KRULL and Dana Krull, Inc.,
Appellees–Defendants.

No. 43A05–0307–CV–366.

Court of Appeals of Indiana.

March 30, 2004.

George E. Horn, Jr., Michael V. Knight, Barnes & Thornburg, South Bend, IN, Attorneys for Appellants.

James H. Milstone, Kopka, Pinkus & Dolin, P.C., South Bend, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

Richard and Janet Orban filed an accountant malpractice and a tortious interference with contract complaint against Dana Krull ("Krull") in Kosciusko Circuit Court. Krull moved for summary judgment, and the Orbans moved for partial summary judgment. The trial court granted Krull's motion and denied the Orbans' motion.[1] The Orbans appeal, pre-

---

1. We observe that Appellants' counsel failed to comply with Indiana Appellate Rule 46(A)(10) by failing to include the appealed order in his brief. *See* Ind. Appellate Rule 46(A)(10) (The appellant's "brief shall include any written opinion, memorandum of decision or finding of fact and conclusions thereon relating to the issues raised on appeal.").

senting the following restated issues for review:

I.   Whether an accountant may be held civilly liable for releasing client information pursuant to an Indiana Department of Revenue ("IDR") subpoena;

II.  Whether the undisputed facts of the case establish Krull's actions were not the proximate cause of the Orbans' alleged injuries;

III. Whether there was a contractual relationship for the Orbans to base their tortious interference with contract claim upon;  and

IV.  Whether the only factually-disputed issue regarding the Orbans' malpractice claim is the amount of damages.

We conclude both parties have failed to meet their burden of establishing they are entitled to summary judgment. Accordingly, we reverse the trial court's decision to grant Krull's Motion for Summary Judgment, affirm the trial court's decision to deny the Orbans' Motion for Partial Summary Judgment, and remand the case to the trial court for further proceedings.

### Facts and Procedural History[2]

■ In 1997, Richard Orban ("Richard") began working for a business venture called Carpet Express. In early 1998, Richard joined David Melching ("Melching") in this venture and formed an Indiana limited liability partnership. Krull, who had been the Orbans' personal accountant since 1989, performed professional accountant services for Carpet Express.

In June of 1999, Melching informed Krull he believed Richard was stealing from Carpet Express and that law enforcement would soon contact Krull regarding the alleged theft. Melching also filed a criminal complaint against Richard and obtained a protective order prohibiting Richard from entering Carpet Express.

After Richard learned of Melching's protective order, he sought the protection of a receiver. Accordingly, Carpet Express went into receivership and ceased doing business roughly three months thereafter.

On August 30, 1999, Special Agent Rick Albrecht ("Agent Albrecht") of the IDR subpoenaed Krull for Richard's accounting information, and Krull gave Agent Albrecht the documents in his possession related to the Orbans.[3] Though the Orbans' checked the box on their tax returns indicating they authorized "the [IDR] to discuss [their] return with [their] preparer," they never gave Krull specific permission to release their information. Appellants' App. pp. 162, 272–75.

Agent Albrecht issued a probable cause affidavit for the Orbans, and several criminal charges were filed against the Orbans. These charges were eventually dismissed following an evidentiary ruling adverse to the State, which stated in part:

[The] documents were released from the personal files of the [Orbans] by their

2.  Many of Krull's factual assertions are not supported by citation to the record and the Orbans encourage us to waive Krull's designated facts. Reply Br. of Appellants at 14 (citing Ind. Appellate Rule 46(B)). It is within an appellate court's discretion to waive designated facts when the facts are not properly cited. *Northside San. Landfill, Inc. v. Envtl. Mgmt. Bd.,* 458 N.E.2d 277, 279 n. 1 (Ind.Ct.App.1984). As our independent ex-amination of the record has located the facts designated by Krull, we find the policy supporting waiver inapplicable and reject the Orbans' invitation.

3.  Krull could not specifically recall what documents he disclosed, and both parties allege the documents at issue are unavailable. Br. of Appellants at 24;  Br. of Appellee at 10.

accountant, Dana Krull without [the Orbans' waiver] of the privilege afforded under I.C. 25–2.1–14 *et seq.* [and] the information · provided by Dana Krull from the personal files of the [Orbans] should be suppressed.

Appellants' App. p. 306.

On June 6, 2003, the Orbans filed a two-count complaint against Krull, alleging accountant malpractice and tortious interference with contract. On February 28, 2003, Krull moved for summary judgment. On March 19, 2003, the Orbans moved for partial summary judgment. On June 18, 2003, the trial court granted Krull's motion and denied the Orbans' motion. The Orbans now appeal.

## I. Summary Judgment

Summary judgment is appropriate only where the moving party demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Thayer v. OrRico,* 792 N.E.2d 919, 923 (Ind.Ct.App.2003), *trans. denied.* All facts and reasonable inferences drawn therefrom are construed liberally and in the light most favorable to the non-moving party. *Id.*

A fact is material if it bears upon the ultimate resolution of the relevant issues. *Yin v. Soc'y Nat'l Bank Ind.,* 665 N.E.2d 58, 64 (Ind.Ct.App.1996), *trans. denied.* Any doubts as to the existence of an issue of material fact must be resolved in favor of the non-moving party. *Am. Mgmt., Inc. v. MIF Realty, L.P.,* 666 N.E.2d 424, 428 (Ind.Ct.App.1996). Even if it appears the non-moving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or lead to conflicting inferences. *Link v. Breen,* 649 N.E.2d 126, 128 (Ind.Ct.App.1995), *trans. denied.*

## II. Accountant—Client Privilege

■ Indiana recognizes accountant-client privilege. Ind.Code § 25–2.1–14–2

(1993). However, in contrast to attorney-client privilege, accountant-client privilege is not recognized at common law. *First Cmty. Bank & Trust v. Kelley, Hardesty, Smith & Co.,* 663 N.E.2d 218, 221 (Ind.Ct.App.1996) (citing *Ernst & Ernst v. Underwriters Nat'l Assurance Co.,* 178 Ind.App. 77, 381 N.E.2d 897 (1978)). The absence of accountant-client privilege at common law limits the privilege to areas specifically designated by statute. *Id* at 221–22. The accountant-client privilege belongs to the client. *Ernst & Ernst,* 381 N.E.2d at 906.

■ Interpretation of a statute is a question of law reserved for the courts. *Spears v. Brennan,* 745 N.E.2d 862, 869 (Ind.Ct.App.2001). This court reviews questions of law *de novo. Ingram v. City of Indianapolis,* 759 N.E.2d 1144, 1146 (Ind.Ct.App.2001), *trans. denied.* When a statute has not previously been interpreted, the express language of the statute and the rules of statutory construction control the statute's interpretation. *Turner v. Bd. of Aviation Comm'rs,* 743 N.E.2d 1153, 1161 (Ind.Ct.App.2001), *trans. denied.* Pursuant to these rules, an unambiguous statute must be construed to mean what it plainly expresses. *Ingram,* 759 N.E.2d at 1146.

■ Krull asserts Indiana Code section 25–2.1–14–1 states, "[an accountant] is not required to divulge information" and the statute's use of "is not required" should not be constructed to denote "may not." Br. of Appellee at 13–14. However, Krull's argument is misplaced, as accountant-client privilege derives from Indiana Code section 25–2.1–14–2.

■ Krull also contends the information he disclosed was not confidential and, therefore, not subject to accountant-client privilege. However, Indiana Code section 25–2.1–14–2 unambiguously states "[t]he information derived from or as the result

of professional services *is confidential* and privileged." Ind.Code section 25–2.1–14–2 (emphasis added). Because Krull clearly obtained the information he disclosed as a result of his professional accounting services, the information "is confidential."

Krull finally contends the Orbans waived his duty by checking the box indicating they "authorized [him] to discuss this matter with the [IDR]." Br. of Appellee at 12. However, this statement mischaracterizes the record, as the waiver reads "I authorize *the Department* to discuss my return with my tax preparer." Appellants' App. p. 162 (emphasis added).

We note *sua sponte* that it is irrelevant that Krull released the Orbans' information pursuant to an IDR subpoena. An accountant is not required to divulge information in connection with any professional service as an accountant. Ind.Code § 25–2.1–14–1. Thus, Krull was permitted to refuse to comply with the IDR subpoena. Furthermore, the subpoena issued to Krull specifically stated it was issued pursuant to Indiana Code section 6–8.1–3–12. Appellants' App. p. 188. This statute indicates that, in order to compel Krull's disclosure, the IDR had the burden of bringing Krull to court where he could have shown good cause for non-compliance. Ind.Code § 6–8.1–3–12 (2000).

The information at issue was obtained as a result of Krull's professional services. Accordingly, Krull had a duty to keep the information confidential unless and until he had the Orbans' informed authorization or was ordered to produce the information by a court of competent jurisdiction in spite of the Orbans' refusal to authorize its release.

### III. Proximate Cause

When determining whether an act is a proximate cause of an injury, we consider whether the injury was a natural and probable consequence of the act.

*Guy's Concrete, Inc. v. Crawford,* 793 N.E.2d 288, 297–98 (Ind.Ct.App.2003), *trans. denied* (citing *Goldsberry v. Grubbs,* 672 N.E.2d 475, 479 (Ind.Ct.App.1996), *trans. denied*). In general, proximate cause is a question of fact for the jury. *Id.*

The Orbans complaint alleges Krull's disclosure caused the loss of their interest in Carpet Express and criminal charges to be filed against them. Appellants' App. p. 75. In order to prove Krull's disclosure led to the termination of Melching and Richard's partnership, the Orbans must, as an initial matter, demonstrate that Krull's disclosure gave Melching some incentive to terminate the partnership. Absent such a showing, it is fair to assume the partnership was terminated independent of Krull's disclosure.

In order for the Orbans to prove Krull's actions proximately caused the filing of their criminal charges, they must either prove Agent Albrecht filed criminal charges on the basis of non-incriminating evidence—related to Krull's disclosure—or the documents released by Krull disclosed incriminating information.

Both parties allege the documents disclosed by Krull are unavailable. However, Agent Albrecht's probable cause affidavit stated in part:

> [T]he trial balance sheet and partnership tax return of Carpet Express LLP and the individual tax return of Richard D. Orban & Janet L. Orban were reviewed by this Affiant. It was determined that the missing partnership income was not reported on the trial balance sheet *presented to the accounting firm* and the missing partnership income was not reported on the partnership tax return and the missing partnership income was not reported on the individual tax return.

Appellants' App. pp. 300–01 (emphasis added). This evidence creates a possible

inference that Krull's disclosure made it appear as though the Orbans committed criminal acts and, for summary judgment purposes, is sufficient to establish a genuine issue of material fact concerning the proximate cause of the Orbans' alleged injuries.

■ Krull also contends the actions of Agent Albrecht and Melching were intervening and superceding causes. An act is "superceding" when the harm resulting from the original act could not have been reasonably foreseen by the original actor. *Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048, 1055–56 (Ind.2003). Because foreseeability is a jury question and it is conceivable that Krull understood the IDR issued its subpoena for the purpose of filing criminal charges, Krull has failed to meet his burden of demonstrating there remains no genuine issue of material fact and that his actions did not cause or contribute to the Orbans' alleged injuries.

### IV. Tortious Interference with Contract

■ A tortious interference with a contract claim requires the plaintiff to establish: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional breach of the contract; (4) the absence of justification; and (5) resulting damages. *Ind. Health Centers, Inc. v. Cardinal Health Sys., Inc.,* 774 N.E.2d 992 (Ind.Ct.App.2002) (citing *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228 (Ind.1994)).

The trial court granted Krull's Motion for Summary Judgment for the Orbans' tortious interference with contract claim because it determined there was no contract for Krull to interfere with. Appellants' App. p. 16. The Orbans assert there are no facts in the record indicating Melching and Richard's partnership agreement

was terminated at the time of Krull's disclosures. Br. of Appellants at 6, 19. Krull does not seem to dispute the Orbans' allegation that Melching and Richard's contract was not terminated at the time of his disclosure but asserts the partnership was "hopelessly at odds." Br. of Appellee at 18 (citing *Ind. Health,* 774 N.E.2d 992).

In *Indiana Health,* the plaintiff was deprived of the employment of a physician as a result of the breach of the physician's employment contract; yet, the plaintiff's tortious interference with contract claim was precluded because the physician had decided to terminate his employment contract before the defendant's conduct. *Ind. Health,* 774 N.E.2d at 1000. *Indiana Health's* determination that the employment contract would have inevitably terminated rendered any possible interference with the contract moot. The same cannot be said for the partnership agreement in the case at bar, as a partnership agreement safeguards contractual expectations beyond mere employment—such as the distribution of partnership assets. Because other aspects of Melching and Richard's partnership agreement may have been affected, Krull's alleged disclosure is not moot.

Under these facts and circumstances, Krull has failed to demonstrate Melching and Richard's partnership agreement had terminated. Accordingly, Krull is not entitled to summary judgment on this issue.

### V. The Orbans' Motion for Partial Summary Judgment

The Orbans' Motion for Partial Summary Judgment alleges the only factual issue concerning their malpractice claim is "the amount of damages and the amount attributable to [Krull's] wrongdoing." Appellants' App. p. 189. In addition, the Orbans allege they are entitled to summary judgment because "[t]he information disclosed by Krull was used to bring felony

charges against [them.]" Br. of Appellants at 25.

In so far as the Orbans allege that Krull had a duty of confidentiality and breached that duty, the Orbans are entitled to summary judgment. However, the Orbans' language can be construed to imply that it is undisputed that Krull's disclosure (1) caused charges to be filed against them and (2) was the proximate cause of at least a portion of their damages.

As discussed in Section III of this opinion, the Orbans must prove their alleged injuries were the natural and probable consequence of Krull's disclosure. There is evidence in the record that creates the possible inference that Agent Albrecht used Krull's disclosure to file charges against the Orbans. Appellants' App. pp. 300–01. However, the Orbans themselves referred to Krull's disclosure as information "everyone now knows was exculpatory evidence subsequently lost or destroyed by the State." Br. of Appellants at 24. If the documents disclosed by Krull were exculpatory, it is difficult—but not impossible—to comprehend how their release facilitated the filing of charges or the end of Melching and Richard's partnership. But, since more than one inference can be gathered from the undisputed facts concerning this issue, summary judgment is inappropriate.

The undisputed facts establish Krull had a duty of confidentiality and breached that duty. However, insofar as the Orbans are arguing the issue, they are not entitled to summary judgment on the issue of the proximate cause of their alleged injuries.

### Conclusion

Both parties have failed to meet their burden of establishing they are entitled to judgment as a matter of law.

Affirmed in part, reversed in part, and remanded.

SHARPNACK, J., and VAIDIK, J., concur.